| | | |
|---|---|---|
| **ANTONIA ROTA-McLARTY** | * | **IN THE** |
| 6941 Red Clay Forge, #210 | | |
| Elkridge, MD 21075, | * | **CIRCUIT COURT** |
| | | |
| *Plaintiff* | * | **FOR** |
| | | |
| v. | * | **HOWARD COUNTY** |
| | | |
| **DRIVE FINANCIAL SERVICES, L.P.** | * | |
| Suite 1100 N | | |
| 8585 N. Stemmons Freeway | * | |
| Dallas, TX 75247 | | |
| **SERVE ON RESIDENT AGENT:** | * | |
| The Corporation Trust, Inc. | | |
| 300 East Lombard St. | * | |
| Baltimore, MD 21202, | | |
| | | |
| *Defendant* | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## CLASS ACTION COMPLAINT AND JURY DEMAND

Plaintiff Antonia Rota-McLarty, through her undersigned attorneys, makes the following complaint, on behalf of herself and a class of similarly situated Maryland consumers, against Defendant Drive Financial Services, L.P.

1.    Plaintiff Antonia Rota-McLarty is a resident of Howard County, Maryland.

2.    Defendant Drive Financial Services, L.P., ("Drive") is a limited partnership with home offices in the State of Texas. Drive was formerly registered to do business in Maryland, but as of the date of this Class Action Complaint, Drive is no longer in good standing with the Maryland State Department of Assessments and Taxation.

3.    Drive is engaged in the business of providing loans to consumers for the purchase of used motor vehicles.

4.    As part of its lending practices in Maryland, Drive regularly takes a security interest in consumers' vehicles and, in the event of default, asserts a right to repossession and

1

resale of the vehicles under the Maryland Credit Grantor Closed End Credit Provisions (CLEC) of the Commercial Code, §§ 12-1001 et seq.

5.     This complaint arises out of the wrongful actions of Drive in the course of its financing practices and its repossession of consumers' vehicles in Maryland pursuant to CLEC.

6.     In or about July, 2007, Plaintiff became interested in buying a used car.  She researched cars for sale at Easterns Automotive Group (Easterns) and found a car on-line that she liked.

7.     When Plaintiff arrived at Easterns to look at the car, she was told that it was no longer available but that another, similar car would be available in the next couple days.

8.     Easterns contacted Plaintiff when the next car was available, and she agreed to come to the Easterns lot in Rockville to look at it.

9.     The car Easterns proposed to sell Plaintiff was a 2001 Mercedes-Benz C240, with the base trim, and with approximately 43,500 miles on the odometer.

10.     The price of the car was set at $21,486.67.  The Easterns salesperson, Dennis Robinson, told Plaintiff that the price was non-negotiable.

11.     In addition, Plaintiff was informed in violation of CLEC § 12-1012(a)(3) that she was required to purchase something called a "Mechanical Repair Contract" for $1,409, bringing the total price of the car to $22,895.67.

12.     Upon information and belief, the price of the car and the service contract were artificially inflated by Easterns, because Easterns arranged financing through Defendant Drive, and it is Drive's policy to require that additional sums be paid above the regular sales price, in order for Drive to approve the financing.

13.    Neither Easterns nor Drive disclosed to Plaintiff that the price of the car was inflated to include an extra, up-front finance charge, in violation of, *inter alia*, CLEC § 12-1005(a)(2).

14.    Plaintiff paid a deposit of $5,000 toward the purchase of the car.  Including the purchase price, the service contract, processing fees, licensing fees, and taxes, the total cost of the car came to $24,261.  The defendant's form shows that Plaintiff financed $19,261 of that cost.

15.    Easterns arranged financing through Drive.  The Retail Installment Sale Contract shows that the loan in the amount of $19,261 had an annual interest rate of 24%, and would cost $13,976 in interest over the life of the loan.  Total payments over the life of the loan would amount to $33,237, bringing the total cost of the car (including down payment) to $38,237.

16.    Shortly after getting the car home, Plaintiff began experiencing difficulties with the car's electrical systems.  She returned the car to Easterns for repair several times in July, but the problem was never fixed.

17.    After several failed attempts to repair the car, Plaintiff returned the car to Easterns and left it there; she returned the tags to the Department of Motor Vehicles.

18.    Plaintiff's first payment to Drive, in the amount of $553.95, was due on or before August 4, 2007.  Plaintiff never made that payment, but informed Drive that she had returned the car to Easterns.

19.    Weeks later, on August 29, 2007, Easterns wrote to Plaintiff, stating: "your vehicle is repaired and ready to be picked up at Easterns of Rockville.... Your failure to pick up the vehicle within 5 days from the date of this letter will result in a storage fee of $25 per day.

We will also be forced to notify your financing bank of the location of the vehicle for

repossession purposes."

20.   Plaintiff never heard again from Easterns or from Drive until the spring of the

next year, 2008, when she was contacted by a collection agency seeking payment of a deficiency

resulting from Drive's exercise of its purported right to repossess the car.

21.   At about this time, Plaintiff also received a letter from Drive.  The letter, which is

undated, references an account number and a 2001 Mercedes-Benz C Class car.  The letter

(attached hereto and incorporated herein as Exhibit 1) states:

> Under the terms of the Retail Installment Contract and Security
> Agreement for the account, and pursuant to applicable law, Drive
> Financial Services, LP disposed of the collateral 2001 Mercedes-
> Benz/C Class pledged to secure the indebtedness for the sum of
> $20,375.49.  After applying the net proceeds from the sale, along
> with any applicable refunds, as required by the terms and
> conditions of the loan contract, a Deficiency Balance remains in
> the amount of $9,693.41, for which you remain liable under your
> Agreement.

22.   The letter shows a computation of the alleged deficiency as follows:

| | |
|---|---|
| Principal Balance | $19,006.00 |
| Finance Charge/Rebate | $1,702.41 |
| **Net Balance** | **$20, 708.41** |
| **Plus Allowed Expenses** | |
| Fees for retaking, holding, preparing for disposition, processing and disposing of the collateral, including attorneys' fees | $255.00 |
| Late charges | $0.00 |
| Miscellaneous Fees | $175.00 |
| **Total Expenses** | **$430.00** |

**Credits**

| | |
|---|---|
| Credits for refunds of ancillary products (insurance premiums, service contracts, GAP coverage) | $0.00 |
| Sale Amount | $11,445.00 |
| Fair Market Adjustments | $0.00 |
| **Total Credits** | **$11,455.00** |
| **Deficiency Balance Due** | **$9,693.41** |

23.     Upon information and belief, the letter showing the deficiency computation is a form letter used by Drive throughout Maryland

24.     The letter does not provide any information regarding the method by which the collateral was disposed, whether by public sale, private sale, or otherwise.

25.     The letter shows that no credit was provided for the unused portion of the service contract that Plaintiff was required to purchase.

26.     The letter does not itemize or explain any of the matters listed as "allowed expenses" or "miscellaneous fees," or show how the finance charge was computed.

27.     Plaintiff brings this action on her own behalf, and on behalf of a class of similarly situated Maryland consumers.  The class is defined as:

> All Maryland residents who purchased motor vehicles and financed their purchases with Drive Financial Services, LP, and whose loans were still unsatisfied as of September 10, 2009.  The class includes a subclass of Maryland residents whose motor vehicles were repossessed by or on behalf of Drive on or after March 10, 2006.

28.     Upon information and belief, the class is so numerous as to make joinder of all members impracticable.  The exact size of the class is known to Defendant.

29.     Common issues of law and fact exist as to all class members.  Those common issues include:  (a) the failure of Drive to disclose accurate finance charges in its financing

contracts; (b) the failure of Drive to provide adequate and accurate notice to consumers regarding their rights upon repossession of their vehicles; (c) the improper attempts by Drive to collect alleged deficiencies from Maryland consumers when those alleged deficiencies are not properly due and owing.

30.     Plaintiff's claim is typical of the claims of other class members in that Plaintiff complains about the identical acts and practices of Defendant that other class members would complain about.

31.     Plaintiff is an adequate representative of the class in that Plaintiff has no conflicts of interest with other class members and is represented by counsel who are experienced in the prosecution of consumer cases and class actions.

32.     The common issues listed above predominate over any individual issues in this action in that Defendant's form contracts, hidden finance charges, and activities and notices surrounding repossession of collateral are uniform as to all class members, and uniformly in violation of applicable Maryland statutes.

33.     A class action is a superior method for the prosecution of this action in that many class members may be unaware of their statutory rights upon repossession, and many would have claims that are too small to prosecute efficiently on an individual basis. The identities and recent addresses of all class members are known to Defendant, and there are no difficulties inherent in the management of the class.

34.     Plaintiff also seeks declaratory or injunctive relief on her own behalf, and on behalf of the class as a whole.

**Count I – Violation of the Maryland Credit Grantor Closed End Credit Provisions (CLEC)**

35.    Plaintiff incorporates the allegations of paragraphs 1 through 34 as if fully set forth herein.

36.    Plaintiff and all class members are "consumer borrowers" as that term is used in the CLEC, §§ 12-1001 *et seq.*

37.    Defendant is a "credit grantor" as that term is used in CLEC, §§ 12-1001, *et seq.*

38.    The transactions at issue as to Plaintiff and all class members are "loans" as that term is used in CLEC, §§ 12-1001, *et seq.*.

39.    Plaintiff's loan agreement, and upon information and belief, the loan agreements of all class members, failed to comply with the notification provisions of CLEC §§ 12-1005 in that, *inter alia*, secret or hidden finance charges were imposed on Plaintiff and all class members in those contracts.

40.    Defendant's actions also violated CLEC § 12-1012 in that Plaintiff was required to purchase a service contract when she purchased the car and financed it with Defendant.

41.    Defendant now claims a deficiency, having repossessed Plaintiff's car and disposed of it at a sale. Defendant's claim is excessive and violates CLEC in that Defendant has failed to comply with the provisions of CLEC §§ 12-1021. Specifically, and without purporting to list all violations, Defendant: (a) failed to send to Plaintiff, within five days after repossession, a written notice, via certified or registered mail, (b) stating her right to redeem the car and the amount payable for redemption, and (c) stating her rights as to a resale and liability for any deficiency, and (d) stating the exact location where the car was stored and the address for payment or notice to be delivered, and (e) failed to provide notice, via registered or certified mail, ten days before the sale, of the time and place of the sale, and (f) failed to provide an

7

accurate accounting for the allocated proceeds of the sale, resulting in a sale that was not commercially reasonable.

43.     Deficiencies claimed by Defendant against Plaintiff and all class members are grossly inflated, and inadequately itemized.

44.     Plaintiff has been damaged by the loss of her $5,000 deposit, as well as damages to her credit, and the class members have been similarly damaged as a result of Defendant's actions in repossessing collateral without proper notice or procedures in place to protect the rights of the debtors.   Plaintiff and the class have been further damaged by Defendant's attempted collection of, and in some cases actual collection of, finance, delinquency and other collection charges in violation of § 12-1018.

WHEREFORE, Plaintiff asks this Court, on her own behalf and on behalf of the class defined herein, to render judgment against defendant, including a Declaration pursuant to Md. Cts. & Jud. Proc. Code § 3-409 that the claimed deficiencies claimed by Defendant are invalid, an award of actual damages in an amount to be determined by the trier of fact, statutory damages as may be permitted under the CLEC including treble damages for interest, fees and other charges, attorneys' fees, plus such other and further relief as this Court may deem appropriate.

## Count II – Maryland Consumer Debt Collection Act

45.     Plaintiff incorporates the allegations of paragraphs 1 through 44 as if fully set forth herein.

46.     Defendant is a debt collector, and Plaintiff and the class are persons, as those terms are defined in the Maryland Consumer Debt Collection Act.

47.     As a collector, Defendant regularly violates § 14-202 of the Act in that Defendant claims, attempts, or threatens to enforce a right with knowledge that the right does not exist, in

8

that Defendant pursues or has pursued collection of debts against Plaintiff and the class herein, claiming full compliance with the consumers' contracts and applicable Maryland law, knowing that its actions, contracts and notices (or lack thereof) are not in compliance with the law.

WHEREFORE plaintiff seeks judgment on her own behalf and on behalf of all class members herein against Defendant for the four year period preceding the filing of this Complaint, for all amounts collected by it pursuant to the defective or missing notices of repossession described herein, plus prejudgment interest, plus an award of their attorneys' fees, plus emotional distress and mental anguish as permitted by Md. Comm. Code § 14-203, plus such other and further relief as this Court may deem appropriate.

### Count III – Unfair and Deceptive Practices

48.     Plaintiff incorporates the allegations of paragraphs 1 through 44 as if fully set forth herein.

49.     The loan documents and notice of deficiency that Defendant sent to or used in Plaintiff's case, and that Defendant routinely uses with respect to all class members, are defective and misleading in that the loans contain hidden finance charges, and the repossession communications reflect deficiencies that cannot be lawfully collected due to the failure of Defendant to provide class members with proper notification of their rights in repossession.

50.     Because they are misleading and based on a deficient documentation, the loan documents and notices of claimed deficiencies are actionable under Md. Commercial Code § 13-303.

WHEREFORE plaintiff seeks judgment on her behalf and on behalf of all class members herein against Defendant, for all amounts collected by it in hidden interest charges, and for amounts collected by it pursuant to the notices of deficiency described herein, plus prejudgment

interest, plus an award of their attorneys' fees, plus such other and further relief as this Court

may deem appropriate.

Respectfully submitted,

Bernard T. Kennedy
P.O. Box 657
Edgewater, MD 21037
Ph (443) 607-8901
Fax(443) 607-8903
bernardtkennedy@yahoo.com

Thomas J. Minton
Goldman & Minton, P.C.
20 South Charles St., Suite 1201
Baltimore, MD 21201
Ph (410) 783-7575
Fax (410) 783-1711
tminton@charmcitylegal.com

*Attorneys for Plaintiff*

## JURY DEMAND

Plaintiff demands a jury trial on all issues so triable.

Respectfully submitted,

Bernard T. Kennedy
P.O. Box 657
Edgewater, MD 21037
Ph (443) 607-8901
Fax (443) 607-8903
bernardtkennedy@yahoo.com