IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

| | |
|---|---|
| ANTONIA ROTA-MCLARTY, | * |
| Plaintiff, | * |
| v. | CIVIL NO.: WDQ-10-0908 |
| SANTANDER CONSUMER USA, INC., | * |
| Defendant. | * |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

MEMORANDUM OPINION

Antonia Rota-McLarty sued Santander Consumer USA, Inc. ("Santander")[1] for various state law claims based on hidden finance charges and improper repossession procedures. For the following reasons, Santander's motion to compel arbitration, and Rota-McLarty's motion to file a surreply will be denied.

I. Background

On July 5, 2007, Rota-McLarty[2] bought a used 2001 Mercedes-Benz from Easterns Automotive Group ("Easterns"), a Maryland dealership. See Compl. ¶¶ 6, 9. The price was $24,261. Id. ¶ 14. Rota-McLarty paid a $5,000 deposit. Id.

---

[1] The Clerk will amend the docket to name as the defendant "Santander Consumer USA, Inc.," the successor by mergers to "Drive Financial Services, L.P." See ECF No. 23 at 1 n.1.

[2] A Maryland citizen. See Compl. ¶ 1; ECF No. 1 at 4.

That day, Rota-McLarty signed a Buyer's Order, providing:

> You agree that this Buyer's Order, together with any documents signed by the party against which such writing is sought to be enforced (collectively[,] the "Agreement") contains the full and final agreement between the parties concerning the purchase of the Vehicle (including but not limited to any financing or warranty issues) and supersedes and replaces all prior or contemporaneous agreement[s] between the parties. . . . [This] Buyer's Order, along with other documents signed by you in connection with this Buyer's Order, comprise the entire agreement between the parties affecting this purchase.
>
> . . . .
>
> If Purchaser is financing this transaction[,] the transaction is conditioned upon approval of Purchaser's retail installment sale contract or lease by a financial source on terms acceptable to the Dealer[.]
>
> . . . .
>
> Arbitration Terms -- The parties agree that all disputes, claims[,] or controversies arising from or relating to the Purchaser's purchase of the Vehicle, the Agreement[,] or the relationship which result[s] from the Agreement . . . shall be resolved by binding arbitration by one arbitrator located in the Dealer's area in the state of Maryland selected by the Dealer (or the assignee of any Retail Installment Sales Contract) with the consent of the Purchaser. . . . [T]he Dealer (or the Assignee of any Retail Installment Sales Contract) may proceed with Court action in the event the Purchaser fails to pay any sums due under the Agreement. . . . A Dispute is any question as to whether something must be arbitrated[,] any allegation concerning a violation of state or federal statute[,] any purely monetary claim greater than $1,000.00 in the aggregate whether contract, tort, or other, arising from the negotiation of and terms of the Buyer's Order [or] any retail installment sale contract[; however,] your failure to pay a note . . . as well as our right to retake possession of the vehicle pursuant to this Buyer's Order shall not be considered a Dispute and shall not be subject to arbitration.

ECF No. 23, Ex. B at 1-2 [hereinafter Buyer's Order].

Also that day, Rota-McLarty entered into a Retail Installment Sale Contract with Easterns to finance the remaining $19,261. *See* ECF No. 23, Ex. C [hereinafter RISC]; Rota-McLarty Dep. 56:3-10, 60:16-61:6, 62:1-3. The RISC includes an integration clause:

> This contract contains the entire agreement between [the Buyer] and [the Seller] relating to this contract. Any change to this contract must be in writing and we must sign it. No oral changes are binding.

RISC 1. The RISC includes financing terms, information about finance charges, and repossession rights and procedures. *Id.* at 2.

"Immediately" after the sale, Easterns assigned the RISC to Santander, an Illinois corporation with its principal place of business in Texas. ECF No. 1 at 4; ECF No. 24 at 1.

On August 4, 2007, Rota-McLarty defaulted on her first payment to Santander. *See* Compl. ¶ 18. Santander then repossessed the car. *See* ECF No. 23 at 2; Compl., Ex. 1.

On March 9, 2010, Rota-McLarty filed a class action complaint in the Circuit Court for Howard County against Santander for imposing hidden finance charges and failing to notify borrowers about their rights upon repossession,[3] unlawfully pursuing debts,[4] and engaging in unfair and deceptive practices.[5] Compl.

---

[3] In violation of the Maryland Credit Grantor Closed End Provisions, Md. Code Ann., Com. Law §§ 12-1001 *et seq.*

[4] In violation of the Maryland Consumer Debt Collection Act, Md. Code Ann., Com. Law §§ 14-201 *et seq.*

¶¶ 35-50.[6] On April 13, 2010, Santander removed the case to this Court on grounds of diversity. ECF No. 1. On April 14, 2010, Santander filed its answer.

On April 16, 2010, a scheduling order was issued. ECF No. 16. On May 13, 2010, the parties jointly moved to modify that schedule; this was granted the next day. ECF Nos. 21-22. They sought bifurcated discovery, devoting the first stage to the issue of hidden finance charges.[7] See ECF No. 21 at 1; ECF No. 23 at 13; ECF No. 24 at 9. Santander noticed and took Rota-McLarty's deposition on all issues, and Rota-McLarty noticed and took Easterns's (presumably limited) deposition. Id.; ECF No. 23 at 13. The parties also exchanged "a few hundred pages of documents," and responded to each other's interrogatories. Id. Rota-McLarty asserts that Easterns produced a document incriminating Santander, which Santander denies. See ECF No. 24 at 10; ECF No. 25 at 12.[8]

---

[5] In violation of the Maryland Consumer Protection Act, Md. Code Ann., Com. Law §§ 13-101 et seq.

[6] She seeks actual, statutory, and treble damages, and fees and other charges. See, e.g., Compl. ¶ 44.

[7] Santander proposed this plan. ECF No. 24 at 9.

[8] Easterns produced a July 9, 2007 letter it received from Drive Financial Services, L.P. ("Drive"), Santander's predecessor. ECF No. 24 at 9. In the letter, Drive states that it is buying Rota-McLarty's RISC, and will send a check to Easterns for $15,143.07. ECF No. 24, Ex. 3. Because Rota-McLarty's loan was $19,261, she

4

On April 27, 2010, the United States Supreme Court decided *Stolt-Nielsen S.A. v. AnimalFeeds International Corp.*, a dispute between commercial parties, which held that a "party may not be compelled under the [Federal Arbitration Act] to submit to class arbitration unless there is a contractual basis for concluding that the party agreed to do so."  130 S. Ct. 1758, 1775 (2010).

On July 26, 2010, *Jock v. Sterling Jewelers, Inc.* was decided; it held that *Stolt-Nielsen* prohibited class arbitration of employment discrimination claims when the applicable agreements were silent about class arbitration.  725 F. Supp. 2d 444, 445, 450-51 (S.D.N.Y. 2010).

On September 30, 2010, Santander moved to compel arbitration and stay proceedings.  ECF No. 23.  On October 15, 2010, Rota-McLarty opposed that motion.  ECF No. 24.  On November 1, 2010, Santander filed its reply.  ECF No. 25.

On November 6, 2010, Rota-McLarty moved to file a surreply. ECF No. 28.  On November 9, 2010, Santander opposed that motion. ECF No. 29.  On November 17, 2010, Rota-McLarty filed her reply. ECF No. 30.

---

asserts that the amount difference reveals a hidden finance charge.  ECF No. 24 at 9.

    Santander asserts that it--not just Easterns--produced the same information during discovery, and that the amount difference merely represents an "acquisition fee" related to Drive's purchase of the RISC that need not be disclosed under Maryland law.  ECF No. 25 at 12.

II. Analysis

A. Standard of Review

In a diversity case, the Federal Arbitration Act (the "FAA") applies to transactions involving interstate commerce. *See* 9 U.S.C. § 2; *Am. Home Assur. Co. v. Vecco Concrete Const. Co.*, 629 F.2d 961, 963 (4th Cir. 1980). If the transaction does not involve interstate commerce, state arbitration law controls. *See, e.g., Mortimer v. First Mount Vernon Indus. Loan Ass'n*, No. AMD-03-1051, 2003 WL 23305155, at *1-*2 (D. Md. May 19, 2003). There is no indication that Rota-McLarty's transaction involved interstate commerce, and the parties agree that Maryland law governs their relationship. *See* ECF No. 23 at 3. *See generally* ECF No. 24. Thus, the Maryland Uniform Arbitration Act (the "MUAA")[9] applies. *See id.*[10]

Under the MUAA, a party to an arbitration agreement may petition for an arbitration order. Md. Code Ann., Cts. & Jud. Proc. § 3-207(a). A written arbitration agreement is valid, enforceable, and irrevocable, "except upon grounds that exist at law or in equity for the revocation of a contract." *Id.* § 3-

---

[9] Md. Code Ann., Cts. & Jud. Proc. §§ 3-201 *et seq.*

[10] Because the MUAA is the "State analogue" to the FAA, Maryland courts rely on federal FAA decisions when construing the MUAA. *Holmes v. Coverall N. Am., Inc.*, 336 Md. 534, 541, 649 A.2d 365, 368 (1994). Both statutes favor the enforcement of arbitration agreements. *See, e.g., EEOC v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002); *Holmes*, 336 Md. at 541, 649 A.2d at 368.

206(a). If the opposing party denies the existence of an arbitration agreement, the Court must determine whether one exists. *Id.* § 3-207(b). If the Court concludes that there is an agreement, arbitration "shall" be ordered. *Id.* § 3-207(c).

Because arbitration is a matter of contract, whether an agreement to arbitrate exists depends on state law contract principles. *Volt Info. Scis., Inc. v. Bd. of Trustees*, 489 U.S. 468, 475-76 (1989); *Cheek v. United Healthcare of Mid-Atl., Inc.*, 378 Md. 139, 147, 835 A.2d 656, 661 (2003). A party may waive the contractual right to arbitrate, thus rendering the arbitration agreement unenforceable. *Commonwealth Equity Servs., Inc. v. Messick*, 152 Md. App. 381, 404-05, 831 A.2d 1144, 1158 (2003).

B. Choice of Law

In a diversity case, the choice of law rules are those of the state in which the district court sits. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496-97 (1941). In contract cases, Maryland uses the *lex loci contractus* rule, under which "the law of the jurisdiction where the contract was made controls its validity and construction." *Kramer v. Bally's Park Place, Inc.*, 311 Md. 387, 390, 535 A.2d 466, 467 (1988). Because the Buyer's Order and the RISC were made in Maryland, Maryland law governs whether the parties agreed to arbitrate. *See* Buyer's Order 1; RISC 1; ECF No. 23 at 2-3.

C. Santander's Motion to Compel Arbitration

Santander moves to compel arbitration of Rota-McLarty's claims under the arbitration clause in the Buyer's Order. ECF No. 23 at 1, 16.[11] Rota-McLarty argues that she never agreed to arbitrate with Santander. ECF No. 24 at 3. She asserts that the arbitration clause may not be invoked by Santander, lacks mutuality, and does not cover her claims. ECF No. 24 at 2, 5-6. She also asserts that Santander has waived arbitration. Id. at 8.

1. Santander's Ability to Invoke the Arbitration Clause

Rota-McLarty argues that Santander is an assignee only to the RISC, which does not contain an arbitration clause. ECF No. 24 at 2, 7 n.1. She further asserts that the RISC is an integrated agreement[12] that prevents Santander from relying on the Buyer's Order and its arbitration clause. Id. at 2. Santander asserts that it may invoke that clause. See ECF No. 23 at 6.

An integration clause does not necessarily mean that the agreement is final and complete; courts must examine the circum-

---

[11] Because the clause is silent about class arbitration, Santander seeks to arbitrate Rota-McLarty's claims on a non-class basis in light of *Stolt-Nielsen*. ECF No. 23 at 11, 16.

[12] *See* RISC 1 ("This contract contains the entire agreement between [the Buyer] and [the Seller] relating to this contract.").
   "'An integrated agreement is a writing . . . constituting a final expression of one or more terms of an agreement.'" *Reutemann v. Lewis Aquatech Inc.*, No. DKC2004-0063, 2005 WL 1593473, at *3 (D. Md. July 5, 2005) (*quoting* Restatement (Second) of Contracts § 209(1)).

stances behind and the content of the agreement. *Jaguar Land Rover N. Am., LLC v. Manhattan Imp. Cars, Inc.*, 738 F. Supp. 2d 640, 648 (D. Md. 2010) (interpreting Maryland contract law). When multiple agreements are made part of a single transaction, they will be interpreted together. *Shoreham Developers, Inc. v. Randolph Hills, Inc.*, 248 Md. 267, 271-72, 235 A.2d 735, 739 (1967).

The Buyer's Order provides that it and "any documents signed by the party against which such writing is sought to be enforced (collectively[,] the 'Agreement') contains the full and final agreement between the parties concerning the purchase of the Vehicle," including "financing" issues. Buyer's Order 1. On its own, the Buyer's Order is "insufficient to explain the full extent of the parties' obligations"[13] because it provides that if the buyer is financing the sale, "the transaction is conditioned upon approval of [the] retail installment sale contract[.]" *Id.* at 2. Further, Rota-McLarty signed the Buyer's Order and the RISC around the same time.[14] These circumstances suggest that the parties did not intend the RISC or the Buyer's Order "standing by itself to be a final and complete integration of the agreed upon terms." *Shoreham*, 248 Md. at 272, 235 A.2d at 739.

---

[13] *Jaguar Land Rover*, 738 F. Supp. 2d at 649.

[14] Rota-McLarty Dep. 56:3-10, 60:16-61:6, 62:1-3; *see Jaguar Land Rover*, 738 F. Supp. 2d at 648.

Accordingly, "although the [RISC] contain[s an] integration clause[], the totality of circumstances indicates that the [RISC and the Buyer's Order] were meant to be read and construed together" as an overall "Agreement." *Jaguar Land Rover*, 738 F. Supp. 2d at 648. Thus, the arbitration clause applies to the Agreement. As Easterns's assignee to the RISC, which is part of the Agreement, Santander may invoke the arbitration clause.[15]

2. Mutuality

Rota-McLarty asserts that the arbitration clause is unenforceable for lack of mutuality. ECF No. 24 at 5-6. She argues that the clause requires buyers to arbitrate, but grants Santander the "unilateral" right to seek judicial relief by allowing it to take court action upon default and when exercising repossession rights. *See id.*[16] Santander asserts that the clause is enforceable. *See* ECF No. 25 at 5 n.3.

An enforceable arbitration agreement includes a "mutual exchange of promises to arbitrate." *Cheek v. United Healthcare of the Mid-Atl., Inc.*, 378 Md. 139, 153-54, 835 A.2d 656, 665 (2003). However, mutuality "does not require an exactly even

---

[15] *See James v. Goldberg*, 256 Md. 520, 527, 261 A.2d 753, 757 (1970) (an assignment transfers all of the assignor's rights and interests to the assignee); *see also Walther v. Sovereign Bank*, 386 Md. 412, 418, 450, 872 A.2d 735, 739, 758 (2005) (assignee of a mortgage loan agreement could invoke arbitration clause).

[16] *See* Buyer's Order 2 (excluding from arbitration the rights to seek deficiency judgments and repossess).

exchange of identical rights and obligations," especially if the advantaged party is justifiably excepted from arbitration. *Walther*, 386 Md. at 433-35, 872 A.2d at 748-49.

Santander's right to seek judicial relief is not unilateral. The arbitration clause allows buyers to litigate purely monetary, $1,000-or-less claims that "aris[e] from the negotiation of and terms" of the Buyer's Order or RISC. Buyer's Order 2.

Also, to the extent Rota-McLarty argues that "there are no important remedies that [Santander] could pursue against [her] that have not been excluded from arbitration," the lack of identical arbitration rights does not defeat mutuality. *Walther*, 386 Md. at 431-35, 872 A.2d at 747-49. Lenders take a risk when executing a secured transaction, and their "ability to protect a loan is enhanced by the legal right to recover."[17] That Santander may bypass arbitration when seeking deficiency judgments and exercising its repossession rights is reasonable. Thus, the arbitration clause includes a sufficiently mutual exchange of promises to arbitrate.

---

[17] *Walther*, 386 Md. at 435-36, 872 A.2d at 749 (citation and internal quotation marks omitted) (arbitration agreement allowing mortgage lender to pursue judicial remedies, such as foreclosure, did not lack mutuality even though the borrower was not provided with identical arbitration exceptions).

3. Scope

Rota-McLarty asserts that her claims are outside the scope of the arbitration clause because they do not turn on an interpretation of the Buyer's Order. ECF No. 24 at 6. Santander argues that her claims are covered. ECF No. 23 at 5-6.

A clause that requires the arbitration of disputes arising out of or relating to the contract should be read expansively.[18]

As explained in Part II.C.1, the arbitration clause applies to the overall "Agreement," which includes the Buyer's Order *and* the RISC. The clause requires arbitration of all claims "arising from or relating to . . . to the Agreement," including allegations of state law violations. Buyer's Order 2. Rota-McLarty has alleged that Santander imposed hidden finance charges, followed improper repossession procedures, unlawfully pursued debts, and engaged in unfair and deceptive practices. Compl. ¶¶ 35-50. These alleged violations arise from or relate to the Agreement; the RISC includes financing terms, information on finance charges, and repossession rights and procedures, and the Buyer's Order conditions sales "upon approval of [the buyer's] retail installment contract." *See* RISC 1-2; Buyer's Order 2. Rota-McLarty's claims are within the scope of the arbitration clause.

---

[18] *See, e.g., Crown Oil & Wax Co. of Del., Inc. v. Glen Const. Co. of Va., Inc.*, 320 Md. 546, 557-60, 569, 578 A.2d 1184, 1189-90, 1195 (1990); *Gold Coast Mall, Inc. v. Larmar Corp.*, 298 Md. 96, 104, 468 A.2d 91, 95 (1983).

Accordingly, there is an arbitration agreement between Rota-McLarty and Santander. *See* Md. Code Ann., Cts. & Jud. Proc. § 3-207(b).

4. Waiver

Rota-McLarty asserts that Santander has waived the right to compel arbitration. ECF No. 24 at 8. She argues that Santander did not seek arbitration until discovery revealed a hidden finance charge;[19] Santander then "simply decided to try a new strategy." *Id.* at 9-10. Rota-McLarty argues that she has been prejudiced because Santander has been able to "assess her case more fully." *Id.* at 10.

Santander argues that it initially participated in this class litigation because it feared that an arbitrator would have compelled class arbitration, and it was reluctant to take that risk when it had "not agreed to arbitrate on a class-wide basis." ECF No. 23 at 11-12. Santander argues that it delayed seeking arbitration because *Stolt-Nielsen*[20] was not issued until after it filed its answer, and it wanted to wait for lower court decisions construing *Stolt-Nielsen* in the "consumer" context, such as

---

[19] *See* discussion *supra* pp. 4-5 n.8.

[20] *Stolt-Nielsen*, a dispute between commercial parties, provided that when an arbitration clause is silent as to class arbitration, such arbitration may not be ordered under the FAA. 130 S. Ct. at 1775.

*Jock*.[21] *Id.* at 11, 16. Santander argues that Rota-McLarty has not been prejudiced by the limited discovery, and denies that a hidden finance charge was revealed. *Id.* at 13; ECF No. 25 at 11-12.[22]

Whether a contracting party has waived its right to arbitrate involves consideration of several factors. *Abramson v. Wildman*, 184 Md. App. 189, 200, 964 A.2d 703, 709 (2009). These include: the extent of its participation in judicial proceedings, including whether an answer has been filed; whether there was a legitimate reason for the participation; and whether the delay in seeking arbitration prejudiced the other party. *See, e.g., Freedman v. Comcast Corp.*, 190 Md. App. 179, 206, 988 A.2d 68, 84 (2010); *Abramson*, 184 Md. App. at 200, 964 A.2d at 709. The intention to waive must be "clearly established," and "will not be inferred from equivocal acts or language." *Gold Coast Mall*, 298 Md. at 109, 468 A.2d at 98. The "belated insistence on arbitration [that] has all the markings of a simple strategic decision" is improper. *Abramson*, 184 Md. App. at 202, 964 A.2d at 710.

Santander has waived its contractual right to arbitrate. It moved to compel arbitration six months after Rota-McLarty sued, and five months after filing an answer directed to the

---

[21] *Jock* construed *Stolt-Nielsen* in an employment discrimination case. 725 F. Supp. 2d at 445, 450-51.

[22] *See* discussion *supra* pp. 4-5 n.8.

merits of her complaint.[23] It also engaged in discovery about Rota-McLarty's allegations of hidden finance charges, which included exchanging hundreds of pages of documents, serving and responding to interrogatories, and taking Rota-McLarty's deposition on *all* allegations. ECF No. 23 at 13; ECF No. 24 at 9.[24] Santander's fear that an arbitrator would have compelled class arbitration is not a legitimate reason for engaging in litigation rather than immediately seeking arbitration.[25] Further, Santander has not answered Rota-McLarty's assertion that it sought arbitration only after litigation had enabled it to fully evaluate her case. *See* ECF No. 24 at 10-11.

---

[23] *See, e.g., Gold Coast Mall*, 298 Md. at 114-15, 468 A.2d at 101 (party preserved its arbitration right by, *inter alia*, refraining from "fil[ing] an answer on the merits"); *Freedman*, 190 Md. App. at 206, 988 A.2d at 84 (party preserved its arbitration right by, *inter alia*, moving "immediately and repeatedly" to compel arbitration and refraining from answering); *Abramson*, 184 Md. App. at 201-02, 964 A.2d at 710-11 (party waived arbitration by, *inter alia*, waiting four months to compel arbitration and filing an answer).

[24] *See, e.g., Abramson*, 184 Md. App. at 201-02, 964 A.2d at 710-11 (party waived arbitration by, *inter alia*, serving interrogatories and a request for production of documents); *Messick*, 152 Md. App. at 399, 831 A.2d at 1154 (parties waived arbitration by, *inter alia*, serving interrogatories and requests for production of documents, and obtaining transcripts of depositions).

[25] For an example of retention of the right to arbitrate after participating in litigation, *see Harris v. Bridgford*, 153 Md. App. 193, 207-08, 835 A.2d 253, 261 (2003) (party preserved his arbitration right after judicial participation because the opposing party had unilaterally withdrawn from arbitration, resulting in a dismissal of the arbitration complaint).

Because Santander has waived arbitration, the arbitration clause is unenforceable, and Rota-McLarty's class action "must be litigated . . . as if no arbitration agreement ever existed." *Messick*, 152 Md. App. at 405, 831 A.2d at 1158. Santander's motion to compel arbitration will be denied.[26]

III. Conclusion

For the reasons stated above, Santander's motion to compel arbitration, and Rota-McLarty's motion to file a surreply will be denied.

5/25/11
Date

William D. Quarles, Jr.
United States District Judge

---

[26] Because Santander has waived arbitration, Rota-McLarty's motion to file a surreply--which merely expanded on her argument that the arbitration clause lacks mutuality--will be denied as moot. *See* ECF No. 28; *see also Abramson*, 184 Md. App. at 202 n.16, 964 A.2d at 711 n.16.